United States District Court
Southern District of Texas
**ENTERED**
June 06, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| YASMIN RUVALCABA | § § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:18–CV–00243 |
| ANGLETON INDEPENDENT SCHOOL DISTRICT, ET AL. | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Defendants' Motion to Dismiss ("Motion to Dismiss") is pending before the Court. *See* Dkt. 15. This motion has been referred to this Court for report and recommendation by United States District Judge George C. Hanks, Jr. *See* Dkt. 20. After thoroughly reviewing the Motion to Dismiss, the response, the reply, and the applicable legal authorities, the Court **RECOMMENDS** that the Motion to Dismiss be **GRANTED**.

### BACKGROUND

Plaintiff Yasmin Ruvalcaba ("Ruvalcaba") was a ninth-grade student at Angleton High School during the 2014–2015 school year. At that time, Jerry Crowell ("Crowell") served as the principal at Angleton High School. Angleton High School is a school within the Angleton Independent School District ("AISD"). According to the First Amended Complaint, Ruvalcaba alleges that a fellow student sexually assaulted her during band class on October 7, 2014.

Ruvalcaba complains that AISD failed to take immediate, effective remedial steps to resolve her complaints of sexual harassment and instead treated her with deliberate indifference. As far as Crowell is concerned, Ruvalcaba alleges that Crowell's conduct after the assault deprived her of the right to access an educational environment free from harassment and discrimination. More specifically, Ruvalcaba claims that Crowell failed to properly investigate the sexual assault, failed to appropriately discipline the perpetrator of the assault, forced her to reenact the attack, failed to advise Ruvalcaba and her parents of the Title IX and AISD grievance processes, and otherwise manifested deliberate indifference to the sexual assault.

Ruvalcaba filed the instant lawsuit, alleging that AISD's actions after the alleged assault violated Title IX, 20 U.S.C. § 1681. The lawsuit also asserts a claim against Crowell under 42 U.S.C. § 1983 ("Section 1983"), contending that Crowell violated Ruvalcaba's right to equal protection under the Fourteenth Amendment to the United States Constitution.

In response to the lawsuit, Defendants have filed a Motion to Dismiss, seeking to narrow the scope of the case. Notably, Defendants have not moved to dismiss the Title IX claim at this time. Instead, Defendants advance two arguments in the Motion to Dismiss: (1) the Section 1983 Equal Protection claim against Crowell should be dismissed because Ruvalcaba has failed to show that any actions by Crowell were personally motivated by Ruvalcaba's gender; and (2) Ruvalcaba's claim for punitive damages under Title IX fails as a matter of law. The Court discusses each argument below.

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citation omitted).

"To survive a Rule 12(b)(6) motion to dismiss, the complaint 'does not need detailed factual allegations,' but it must provide the plaintiff's grounds for entitlement to relief—including factual allegations that, when assumed to be true, 'raise a right to relief above the speculative level.'" *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). *See also Stanfield v. Boston Sci. Corp.*, 166 F. Supp. 3d 873, 877 (S.D. Tex. 2015) (a motion to dismiss "is not a procedure for resolving contests about the facts or merits of a case"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

As a final note, it is worth remembering that a Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (internal quotation marks and citation omitted).

3

## DISCUSSION

**A. HAS RUVALCABA SUFFICIENTLY PLED A SECTION 1983 EQUAL PROTECTION CLAIM AGAINST CROWELL?**

In the Motion to Dismiss, Crowell argues that he is entitled to dismissal of Ruvalcaba's Section 1983 Equal Protection claim because she "has failed to plead any facts that would show that Crowell was personally motivated to take any alleged acts because of Plaintiff's gender." Dkt. 15 at 12. "In this case," Crowell asserts, "there are no factual allegations that Jerry Crowell failed to investigate the reported assault, failed to discipline the male student, and/or failed to advise Plaintiff and her parents of any grievance processes because of her gender." *Id.* at 18. In response, Ruvalcaba strenuously maintains that the First Amended Complaint sufficiently alleges that Crowell's actions were personally motivated by Ruvalcaba's gender.

The relevant legal standards that govern a Section 1983 Equal Protection claim are well-established. To state a claim under Section 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). In this case, Ruvalcaba contends that she has been denied the "right to equal access to an educational environment free from harassment and discrimination" provided to her by the Equal Protection Clause of

4

the Fourteenth Amendment to the United States Constitution. Dkt. 14 at 26.[1] Thus, we must turn to the Fourteenth Amendment for guidance.

The Fourteenth Amendment's Equal Protection Clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV. In essence, the Equal Protection Clause requires that similarly situated persons should be treated alike. *See Plyler v. Doe,* 457 U.S. 202, 216 (1982); *Williams v. Bramer,* 180 F.3d 699, 705 (5th Cir. 1999). To properly state an Equal Protection Clause claim, a plaintiff must allege that she "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro, LLC v. Hilton,* 568 F.3d 181, 212 (5th Cir. 2009) (internal quotation marks and citation omitted). Put another way, a plaintiff seeking to recover on an Equal Protection claim must show that a state actor intentionally discriminated against her because of her membership in a protected class. *See Vill. of Arlington Heights v. Metro Housing Dev. Corp.,* 429 U.S. 252, 265 (1977); *Bowlby v. City of Aberdeen,* 681 F.3d 215, 227 (5th Cir. 2012). "A

---

[1] Ruvalcaba asserts that although she is claiming under Section 1983 that Crowell violated her "right to equal access to an educational environment free from harassment and discrimination, . . . [t]his does not transform Ruvalcaba's claim against [Crowell] into a Fourteenth Amendment or Equal Protection claim." Dkt. 18 at 6. Ruvalcaba is incorrect. Section "1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.*, rights independently secured by the Constitution and laws of the United States." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 285–86 (2002) (internal quotation marks and citation omitted). *See also Albright v. Oliver,* 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks and citation omitted). "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Chapman v. Hous. Welfare Rights Org.,* 441 U.S. 600, 617 (1979). Thus, Ruvalcaba's core complaint against Crowell is that he has violated the Equal Protection Clause of the Fourteenth Amendment.

discriminatory purpose 'implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.'" *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)).

The First Amended Complaint goes to great lengths to discuss Crowell's alleged actions—and inactions—that Ruvalcaba believes violated the Equal Protection Clause. The factual allegations against Crowell certainly paint a picture of a school administrator who has failed to act in the best interests of a student. But the legal test on a Rule 12(b)(6) motion to dismiss an Equal Protection claim is not whether Crowell has purportedly acted in such a way to endanger a student. Instead, to defeat a Rule 12(b)(6) motion to dismiss, Ruvalcaba must make sufficient allegations that Crowell intended to discriminate against Ruvalcaba because of her membership in a protected group. *See id.* This is where the First Amended Complaint fails.

Notably absent from Ruvalcaba's live pleading is any allegation that Crowell's treatment of Ruvalcaba was motivated by her gender, or any allegation that Crowell treated females differently from males under similar circumstances. Sure, Ruvalcaba alleges that Crowell failed to investigate the sexual assault, failed to discipline the student who committed the sexual assault, and forced Ruvalcaba to reenact the attack. But these allegations do not reflect an intent to discriminate against Ruvalcaba because of her gender. Although Ruvalcaba baldly states that the First Amended Complaint refers to "gender-based acts," there are simply no allegations to be found anywhere in the First Amended Complaint that a male student accusing a fellow student of a sexual assault would be treated any differently than a

6

female student like Ruvalcaba. Dkt. 19 at 3. This omission is critical. *See Ayala v. Hous. Indep. Sch. Dist.*, 305 F. Supp. 3d 726, 731 (S.D. Tex. 2018) (dismissing an Equal Protection claim in a student-on-student sexual assault case on summary judgment because the plaintiff failed to present "evidence of intent to discriminate against I.L. because of her sex"); *Alice L. v. Eanes Indep. Sch. Dist.*, No. A-06-CA-944-SS, 2007 WL 9710282, at *5 (W.D. Tex. Mar. 15, 2007) (denying a motion to dismiss Equal Protection claims in a student-on-student sexual assault case because the complaint specifically alleged that defendant "selectively denied the school district's protective services to R.L. in violation of the Equal Protection Clause by intentionally treating allegations of abuse by a female perpetrator as less serious than allegations of abuse by a male perpetrator.").

In sum, the Court recommends that Ruvalcaba's Section 1983 Equal Protection claim against Crowell be dismissed because Ruvalcaba has failed to plead facts to show that any actions by Crowell were personally motivated by Ruvalcaba's gender.

**B.  ARE PUNITIVE DAMAGES AVAILABLE IN A TITLE IX CASE?**

Defendants next seek dismissal of Ruvalcaba's request that punitive damages be awarded on her Title IX claim. In advancing this argument, Defendants cite a plethora of cases from across the country holding that "punitive damages are not available for private actions brought to enforce Title IX." *Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002). *See also Ayala v. Omogbehin*, No. H-16-2503, 2016 WL 7374224, at *4 (S.D. Tex. Dec. 20, 2016) ("[I]t is clear that punitive damages are not recoverable under Title IX."); *Schultzen v. Woodbury Cent. Cmty. Sch. Dist.*, 187 F. Supp. 2d 1099, 1128 (N.D. Iowa 2002) ("In light of the well-settled presumption of municipal immunity from punitive damages and

7

the absence of any indicia of congressional intent to the contrary, the court finds that punitive damages are unavailable against local governmental entities under Title IX.").

In response, Ruvalcaba asserts that Defendants are flat out wrong, arguing that punitive damages are, in fact, available under Title IX. Although Ruvalcaba does not cite a single case approving the award of exemplary damages in a Title IX case, she notes that the Supreme Court has held that a "damages remedy is available for an action brought to enforce Title IX" and "the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett Cty. Pub. Schools,* 503 U.S. 60, 71, 76 (1992). Ruvalcaba maintains that this language establishes that the Supreme Court has implicitly recognized a federal judge's discretion to allow punitive damages in an appropriate Title IX case. This Court is not persuaded by Ruvalcaba's argument.

Ruvalcaba completely ignores the Supreme Court's 2002 decision in *Barnes v. Gorman,* 536 U.S. 181 (2002), a case which has all but ruled out the possibility of punitive damages in a Title IX case. In *Barnes,* the high court addressed the question of whether punitive damages were available under Section 202 of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act—two statutes which borrow their remedies from Title VI of the Civil Rights Act of 1964. In its analysis, the Supreme Court explained that Title IX is modeled after Title VI and should be interpreted and applied in the same manner as Title VI. *See id.* at 185 ("[T]he Court has interpreted Title IX consistently with Title VI."). Noting that the foundation of a Title IX claim is contract law and that punitive damages are not recoverable in a contract action, the Supreme Court observed:

> Title IX's contractual nature has implications for our construction of the scope of available remedies. One of these implications, we believe, is that a remedy is appropriate relief, only if the funding recipient is *on notice* that, by accepting federal funding, it exposes itself to liability of that nature. A funding recipient is generally on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract. Thus we have held that under Title IX, which contains no express remedies, a recipient of federal funds is nevertheless subject to suit for compensatory damages and injunction, forms of relief traditionally available in suits for breach of contract. *But punitive damages, unlike compensatory damages and injunction, are generally not available for breach of contract.*

*Id.* at 187 (internal quotation marks and citations omitted) (emphasis added). Utilizing this reasoning, the Supreme Court treated Title VI obligations as essentially contractual, and accordingly found that punitive damages were not available under Title VI. This same analysis, by extension, applies to Title IX cases. As a result, there can be little doubt how the Supreme Court would rule if asked to determine if punitive damages are available in a Title IX case. *See Mercer*, 50 F. App'x at 644 ("[T]he Supreme Court's conclusion in *Barnes* that punitive damages are not available under Title VI compels the conclusion that punitive damages are not available for private actions brought to enforce Title IX.").

In sum, the Court holds that punitive damages are unavailable against educational institutions under Title IX, joining the overwhelmingly majority of courts across the country who have addressed this issue. *See, e.g., Bergholz v. John Marshall Law School*, No. 18-C-3, 2018 WL 5622052, at *4 (N.D. Ill. Oct. 30, 2018) ("punitive damages are unavailable under Title VI, and because Title VI is interpreted consistently with Title IX, punitive damages are unavailable under Title IX."); *Pejovic v. State Univ. of N.Y. at Albany*, No. 1:17-CV-1092, 2018 WL 3614169, at *7 (N.D.N.Y. July 26, 2018) ("The Court is persuaded that the Supreme

9

Court's logic [in *Barnes*] concerning the interplay between the [Americans with Disabilities Act], the Rehabilitation Act, Title VI, and Title IX does not permit the imposition of punitive damages in [a Title IX case]."); *Bullard v. DeKalb Cty. Sch. Dist.*, No. 1:05-CV-1608-CAP, 2006 WL 8432670, at *4 (N.D. Ga. Feb. 9, 2006) ("punitive damages are not available against a school district for violations of Title IX").

## CONCLUSION

The Court **RECOMMENDS** that the Motion to Dismiss be **GRANTED**. More specifically, the Court recommends that (1) Ruvalcaba's Section 1983 Equal Protection claim against Crowell be dismissed; and (2) Ruvalcaba's request that punitive damages be awarded on her Title IX claim be dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 6th day of June, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE