Case 3:18-cv-00243 Document 36 Filed on 12/19/19 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
December 19, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| YASMIN RUVALCABA, | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:18–CV–00243 |
| ANGLETON INDEPENDENT SCHOOL DISTRICT, ET AL., | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant Angleton Independent School District's Motion for Summary Judgment ("Motion for Summary Judgment"). *See* Dkt. 30. After thoroughly reviewing the Motion for Summary Judgment, the responsive briefing, and the applicable law, I **RECOMMEND** that the Motion for Summary Judgment be **GRANTED**.

### FACTUAL BACKGROUND

Plaintiff Yasmin Ruvalcaba ("Ruvalcaba") was a ninth-grade student at Angleton High School during the 2014–2015 school year. At that time, Jerry Crowell ("Crowell") served as the principal at Angleton High School. Angleton High School is a school within the Angleton Independent School District ("AISD").

Ruvalcaba alleges that a fellow student, J.F., sexually assaulted her during her sixth period band class on October 7, 2014. The first time anyone associated with AISD learned that Ruvalcaba claimed that she had been sexually assaulted on campus was on the evening of October 7, 2014, when Ruvalcaba and her mother visited the City of Angleton Police

Department to file a report. AISD immediately initiated an investigation into the allegations of sexual assault raised by Ruvalcaba. Crowell led the investigation. As part of the investigation, Crowell conducted numerous interviews. Those interviewed included Ruvalcaba (multiple times), J.F. (multiple times), J.F.'s friends, the band directors, Ruvalcaba's teachers, Ruvalcaba's boyfriend, and various students who were in the vicinity of the alleged sexual assault. Crowell also obtained and viewed video footage from the school and visited the site of the alleged sexual assault. After reviewing the evidence collected, Crowell concluded that J.F. had not assaulted Ruvalcaba. This conclusion was based on what AISD believed to be numerous inconsistencies with her story and a lack of any corroborating evidence.

Ruvalcaba filed suit against AISD, claiming that its actions violated Title IX, 20 U.S.C. § 1681. Ruvalcaba also filed a claim against Crowell under 42 U.S.C. § 1983 and the Equal Protection Clause. I dismissed the claim brought against Crowell pursuant to Rule 12(b)(6) for failure to state a claim. *See Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 3:18-CV-00243, 2019 WL 2996536 (S.D. Tex. June 6, 2019). AISD has now moved for summary judgment on the single remaining Title IX claim.

## SUMMARY JUDGMENT STANDARD

"The law on whether a district court can grant summary judgment on Title IX student-on-student harassment claims is settled. Summary judgment on Title IX claims is appropriate if there are no genuine disputes as to material facts and the moving party is entitled to [judgment as a matter of law]." *I.F. V. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 371 (5th Cir. 2019). *See also* FED. R. CIV. P. 56(a) (Summary judgment is appropriate

when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (internal quotation marks and citation omitted). "The moving party . . . bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (internal quotation marks and citation omitted). If the burden of production at trial "ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310–11 (5th Cir. 2017) (quotation marks and citation omitted). Once a party "meets the initial burden of demonstrating that there exists no genuine issue of material fact for trial, the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon*, 808 F.3d at 270 (quotation marks and citation omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. [It] must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid summary judgment." *Id.* (internal quotation marks and citations omitted). "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 414 (5th Cir. 2018) (quotation marks and citation omitted).

3

## ANALYSIS

Title IX states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Student-on-student sexual harassment can give rise to Title IX liability. *See Davis v. Monroe Cty. Bd. Of Educ.*, 526 U.S. 629, 633 (1999). The Fifth Circuit has held that a plaintiff in a student-on-student sexual harassment case must prove five elements to establish a Title IX claim:

> A school district that receives federal funds may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment.

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) (quoting *Davis*, 526 U.S. at 650). It is not enough for Ruvalcaba to show that she was sexually assaulted; rather, she must show that AISD was somehow responsible for her assault. *See Davis*, 526 U.S. at 640 (A school district "may be liable in damages under Title IX only for its own misconduct," not for the misconduct of the alleged harasser.).

In moving for summary judgment on the Title IX claim, AISD alleges that Ruvalcaba has failed to produce any evidence to establish a fact issue with respect to element one (actual knowledge of the harassment) or element five (deliberate indifference to the harassment). I will address these arguments in turn.

4

A.  **ELEMENT ONE: RUVALCABA PRESENTS NO EVIDENCE THAT AISD HAD ACTUAL KNOWLEDGE OF GENDER-BASED SEXUAL HARASSMENT BEFORE THE ALLEGED SEXUAL ASSAULT**

To prevail in a Title IX student-on-student sexual harassment case, a plaintiff must show that the school district had actual knowledge of the harassment. *See id.* at 650. "Courts have generally described the substance of the 'actual knowledge' required to impose Title IX liability as knowledge of a substantial risk of abuse to students." *Doe v. Bibb Cty. Sch. Dist.*, 83 F. Supp. 3d 1300, 1307 (M.D. Ga. 2015) (collecting cases). The underlying purpose of the "actual knowledge" requirement is to determine "whether the appropriate official possessed enough knowledge of the harassment that he or she reasonably could have responded with remedial measures to address the kind of harassment upon which [the] plaintiff's legal claim is based." *Roe v. Gusting Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1030 (E.D. Cal. 2009). *See also Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 659 ("For the school to be said to have 'actual knowledge' of harassment, an 'appropriate person'—'an official of the recipient entity with authority to take corrective action'—must have both actual knowledge of the harassment and an 'opportunity to rectify any violation.'") (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). "School administrators have actual knowledge only of the incidents that they witness or that have been reported to them." *Doe v. Galster*, 768 F.3d 611, 618 (7th Cir. 2014).

It is undisputed that AISD learned of the alleged sexual assault at issue in this case on the night of October 7, 2014, when Ruvalcaba made a report to law enforcement. In its Motion for Summary Judgment, AISD argues that Ruvalcaba "cannot show that the school

5

district had any actual knowledge that [Ruvalcaba] and J.F. had any prior gender-related problems before the single October 7, 2014 incident that would have placed school officials on notice of sexual harassment." Dkt. 30 at 20. Not surprisingly, Ruvalcaba has a different viewpoint, claiming that AISD had actual knowledge of prior misconduct by J.F. that was sufficient to alert AISD that he posed a risk of sexual harassment to Ruvalcaba. In particular, Ruvalcaba swears that:

> [J.F.] repeatedly and openly bullied me in many ways. He verbally attacked me in front of others, graphically threatened me, and encouraged other students to harass me. The bullying started in August 2014 and it occurred during band classes and band practices. The bullying escalated when [J.F.] repeatedly and intentionally would take my personal property, mishandle my Epi-Pen with intent to break it, make inappropriate noises and comments about the Epi-Pen's shape and my use of it.
>
> I reported to Nathan Carter [the band director] numerous times that [J.F.] was bullying me, that he was taking possession of my personal belongings including the Epi-pen, threatening to break my Epi-pen, and damaging my purse. I reported to Mr. Carter that [J.F.] was name-calling and would use his body to make inappropriate movements. I asked Mr. Carter to make [him] stop. Mr. Carter did not do anything to stop [him] and the bullying continued.

Dkt. 30-18 at 3.

These generalized complaints of bullying or non-sexual misbehavior are legally insufficient to place a school district on notice of severe sexual harassment. *See I.F.*, 915 F.3d at 377 (finding that the defendant was not deliberately indifferent because the plaintiff "did not give specific details" despite having reported being "severely bullied"); *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) ("[Plaintiff's] complaints that boys were 'bothering her' . . . were insufficient to constitute actual notice of sexual harassment[.] . . . [I]n the absence of anyone knowing that the sexual harassment

6

was occurring, a negligent failure to investigate [Plaintiff's] generalized complaints [does] not result in Title IX liability."). As the Fifth Circuit observed:

> [T]he *Davis* Court explained that courts "must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults." "Early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it." Thus, to be actionable, the harassment must be more than the sort of teasing and bullying that generally takes place in schools; it must be "severe, pervasive, and objectively unreasonable." The Court further warned, in response to the concern that a school might be liable for *any* negative student interactions, that courts should not be "mislead . . . to impose more sweeping liability than" what title IX requires.

*Sanches*, 647 F.3d at 167 (brackets omitted) (quoting *Davis*, 526 U.S. at 651–52). Thus, even if AISD was aware that J.F. teased Ruvalcaba, bullied her, insulted her, called her names, and took her personal belongings, such conduct would not give rise to Title IX liability. That conduct is admittedly sophomoric, but it is also the kind we often expect from high school students. Stated simply, this type of behavior is certainly not sufficient to alert a school district that the individual engaging in such conduct posed a risk of sexual harassment to students.

With respect to the Epi-Pen, the summary judgment evidence reflects only that J.F. took Ruvalcaba's Epi-Pen, "made inappropriate noises and comments about the Epi-Pen's shape and [her] use of it." Dkt. 30-18 at 3. There is no indication what the "inappropriate noises" were, nor any explanation describing what was specifically said about the nature or use of the Epi-Pen. It is Ruvalcaba's burden to show that AISD had actual knowledge of gender-based sexual harassment that was more than "merely tinged with offensive

7

sexual connotations." *Sanches*, 647 F.3d at 165. Ruvalcaba simply asks me to assume that the noises and comments relating to the Epi-Pen were sexual references, but she fails to present any summary judgment evidence describing or explaining with specificity the alleged improper noises or comments. More problematic, there is absolutely no evidence that Ruvalcaba ever reported the alleged sexual nature of J.F.'s Epi-Pen comments to the band director or anyone else associated with AISD. To the contrary, when Ruvalcaba explains what she reported to the band director, she specifically excludes any behavior of a sexual nature:

> I reported to Nathan Carter [the band director] numerous times that [J.F.] was bullying me, that he was taking possession of my personal belongings, including my Epi-Pen, threatening to break my Epi-pen, and damaging my purse.

Dkt. 30-18 at 3. Accordingly, Ruvalcaba's reports of generalized bullying were insufficient to place AISD on actual notice of severe sexual harassment and certainly did not place AISD on notice that Ruvalcaba was at risk of sexual assault. *See Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trs.*, 855 F.3d 681, 689 (5th Cir. 2017) (affirming the dismissal of the plaintiff's Title IX claim because no school employee witnessed the sexual harassment and the plaintiff did not report the sexual harassment to the school district).

In sum, Ruvalcaba presents no summary judgment evidence establishing that AISD had actual knowledge that she was subjected to sexual harassment or that she was at risk of sexual assault before the October 7, 2014 alleged incident. Therefore, AISD is entitled to judgment as a matter of law on any pre-incident claim.

8

## B. ELEMENT FIVE: RUVALCABA PRESENTS NO EVIDENCE THAT AISD WAS DELIBERATELY INDIFFERENT

Deliberate indifference is the fifth element of a Title IX claim. For AISD "to be liable under Title IX, it must have been deliberately indifferent to student-on-student harassment." *I.F.*, 915 F.3d at 368. It is undisputed in this case that AISD had actual knowledge of the alleged sexual assault on October 7, 2014. Thus, my task is to review the summary judgment evidence and determine whether AISD's response to the allegations of sexual assault were deliberately indifferent.

The Fifth Circuit recently summarized the deliberate indifference standard as follows:

> Deliberate indifference is an extremely high standard to meet. A school district's response to the harassment or lack thereof must be clearly unreasonable in light of the known circumstances. Because deliberate indifference is a lesser form of intent rather than a heightened degree of negligence, neither negligent nor merely unreasonable responses are enough. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. Indeed, as the district court noted, our precedent makes it clear that negligent delays, botched investigations of complaints due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference.

*Id.* at 368–69 (quotation marks, citations, brackets, and ellipses omitted).

Importantly, "[t]he deliberate-indifference inquiry does not transform every school disciplinary decision into a jury question." *Nevills v. Mart Indep. Sch. Dist.*, 608 F. App'x 217, 221 (5th Cir. 2015) (quotation marks and citation omitted). The United States Supreme Court and the Fifth Circuit have both expressly held that "in ruling on a motion for summary judgment, a district court can determine, as a matter of law, that a party was

9

not deliberately indifferent." *I.F.*, 915 F.3d at 370. *See also Davis*, 526 U.S. at 649 ("In an appropriate case, there is no reason why courts, on a motion . . . for summary judgment, . . . could not identify a response as not 'clearly unreasonable' as a matter of law.").

"Because the deliberate indifference inquiry focuses on the school's response to known harassment, the response must be so deficient as to *itself* constitute harassment." *I.L. v. Hous. Indep. Sch. Dist.*, 776 F. App'x 839, 843 (5th Cir. 2019). When a school district performs a comprehensive investigation after learning of an alleged assault and concludes that no assault occurred, there is no deliberate indifference as a matter of law—even if that investigation turns out to have been wrong. *See, e.g., I.F.*, 915 F.3d at 376–77 (no deliberate indifference when school district interviewed 14 students and concluded that it could not establish with sufficient evidence that a sexual assault had occurred); *K.S. v. Nw. Indep. Sch. Dist.*, 689 F. App'x 780, 786 (5th Cir. 2017) ("Even if the District was incorrect in some of its findings that K.S. was the instigator, and we do not know that it was, such would reflect only the difficulties of fact-finding—not indifference."); *Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 388 (5th Cir. 2000) (no deliberate indifference when school district conducted investigation and concluded, in error, that student's sexual abuse allegations were untrue).

After thoroughly reviewing the summary judgment record, I find, as a matter of law, that AISD's response to the alleged sexual assault was not deliberately indifferent. This is definitely not a situation in which school district officials received notice of a sexual assault and did absolutely nothing in response. Quite the opposite. On the same day AISD officials learned of Ruvalcaba's sexual assault allegations, AISD immediately launched an

10

investigation. Led by Crowell, the investigation was thorough and sought to uncover all the information that would shed light on whether a sexual assault had taken place. A lengthy report put together at the end of the investigation detailed who AISD interviewed, what information AISD gathered, and why AISD concluded that no sexual assault occurred.[1] The uncontroverted summary judgment evidence establishes that AISD's investigation included the following:

- Crowell, his staff, and the AISD Police Department interviewed J.F. and Ruvalcaba multiple times.

- Crowell, his staff, and the AISD Police Department questioned almost all of the adults and students with whom Ruvalcaba had been in contact with the day of the alleged sexual assault.

- Crowell and his staff acquired written statements from Ruvalcaba, J.F., and many of the other questioned individuals.

- Crowell and the AISD Police Department examined the physical premises where the alleged assault took place.

- Crowell and the AISD Police Department reviewed video footage showing the area near where the alleged sexual assault occurred at and around the time of the alleged assault's occurrence.

In an effort to show that AISD acted with deliberate indifference, Ruvalcaba throws out a number of arguments, hoping that one sticks. None are remotely persuasive. First, she asserts that AISD's failure to interview two individuals—Eric Guillen and "Kylee"—who allegedly could corroborate Ruvalcaba's claims constitutes deliberate indifference. The problem with Ruvalcaba's argument is that she fails to explain what specific

---

[1] Ruvalcaba complains that the final report is undated. Although I am not sure why it matters if the report is dated or not, Crowell expressly states that he wrote out the report "on or around October 24, 2014." Dkt. 30-1 at 3.

11

information these individuals would have told investigators that would have made a difference and fails to establish that AISD had knowledge that these individuals possessed relevant information. Importantly, the burden is on Ruvalcaba to raise a genuine issue of material fact as to whether AISD was deliberately indifferent. *See Brandon*, 808 F.3d at 270. Moreover, it is well established that "Title IX does not require flawless investigations or perfect solutions." *Sanches*, 647 F.3d at 167. Instead, school districts "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Davis*, 526 U.S. at 649. "[E]ven if the school's investigative and disciplinary response could have been better, neither negligence nor mere unreasonableness is enough to support a Title IX deliberate indifference claim." *I.L.*, 776 F. App'x at 843 (internal quotation marks and citation omitted). *See also Sanches*, 647 F.3d at 167 (The clearly unreasonable standard "is a high bar, and neither negligence nor mere unreasonableness is enough.").

Second, Ruvalcaba claims that the AISD police department did not receive specific training on sexual assault investigations in 2013 and 2014, and this creates a fact issue on deliberate indifference. I strongly disagree. Although the AISD police department did assist with the investigation, Crowell was the primary investigator for Title IX purposes. There is absolutely no evidence that he failed to conduct the investigation in a responsible and diligent manner. Tellingly, Ruvalcaba readily admits that AISD employees, like Crowell, received training on "sexual harassment," "the investigation process," "strategies for protecting students," and "the importance of conducting investigations." Dkt. 31 at 8. Moreover, the Fifth Circuit has made clear that "negligent delays, botched investigations of complaints *due to the ineptitude of investigators*, or responses that most reasonable

12

persons could have improved upon do not equate to deliberate indifference." *I.F.*, 915 F.3d at 369 (quotation marks omitted) (emphasis added) (collecting cases).

Next, Ruvalcaba asserts that AISD's failure to notify her that an investigation was taking place is evidence of deliberate indifference. Putting aside the fact that there is no case law I am aware of suggesting that a school district must notify a student that it is conducting an investigation, there is no reasonable basis to believe that Ruvalcaba was unaware that an investigation was underway. AISD's representatives interviewed her multiple times and asked her to provide a written statement. If that was not part of an investigation, what was it? In addition, Ruvalcaba admits in her First Amended Complaint that on the day of the alleged assault, AISD administrator Christina Todd told her and her mother that "[w]e are investigating." Dkt. 14 at 9. This is a judicial admission that she knew that AISD was investigating her allegations of sexual assault. *See Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings.").

Ruvalcaba also contends that the band director, who witnessed Ruvalcaba and J.F. enter the practice room together, was deliberately indifferent because he did not immediately check to see what they were doing. But there is no evidence that the band director would have any reason to suspect anything improper was about to occur between the two students. As AISD observes:

> Surely Title IX does not create such a high level of strict liability that schools can no longer allow boys and girls to be together in high school outside the watchful eye of an adult, for any purpose or for however long[.] Such a standard of liability is complete[ly] unsupported by *Davis* and its progeny.

13

Dkt. 32 at 5.

Even drawing all reasonable inferences in favor of Ruvalcaba at the summary judgment stage, as I must, I find that no reasonable jury could conclude that AISD's investigation into the sexual assault allegations was clearly unreasonable. Ruvalcaba has failed to create a genuine issue of material fact. As a result, I find, as a matter of law, that AISD did not act with deliberate indifference.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that AISD's Motion for Summary Judgment (Dkt. 30) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 19th day of December, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE